Before beginning the in-bank argument, I'd just like to say how delighted we are to have four of our colleague Judge King's grandchildren here. They've come to hear the argument, and I've met them, and it sure is a wonderful family. So welcome to you all. We're so happy to have you. Thank you, Judge Walker. Indeed. And your children should behave better than you're going to see us behave. Ms. Sanghvi, we'd be happy to hear from you. Good morning, and may it please the Court, Neelam Sanghvi on behalf of James Blakely. Mr. Blakely's summary judgment orders should not be counted as strikes because summary judgment is not a dismissal listed in Section 1915G, and that should be the end of the analysis. That rule is quick and easy to apply, and most important, it is what the PLRA mandates. To hold otherwise would require courts dealing with ISP applications and prisoner cases to look beyond a grant of summary judgment to see if they could try to ascertain the underlying reasons for that grant, and then to determine whether those reasons, if they can be ascertained at all, match up to a ground in 1915G. What if the Court states in its summary judgment order the reason for dismissal, and that matches up directly with the statute? If the Court, for example, entered a summary judgment... I'm dismissing summary...dismiss this case on summary judgment because of frivolousness. I think that under the plain language of the PLRA, that still would not count as a strike because the basis for judgment there is still summary judgment, which is not a dismissal listed in 1915G, and the PLRA actually speaks to what a court should do in that situation. You can't have a summary judgment of dismissal. Supreme Courts use that actual term. Summary judgment... You can have a judgment of dismissal, or you can have an order of dismissal. An order of dismissal that's not final is an order under 12b-6. A judgment of dismissal is one that's final in its nature and is appealable under Rule 54. And you can have...when you can have a judgment, you can also have a summary judgment. I think the question that you want to jump past is whether...how do we evaluate a summary judgment to determine whether it's dismissing the case for frivolousness? But Judge Shedd's question is, what if the summary judgment dismisses the case as frivolous? Right. And you're saying that that doesn't fit into Congress's mold of a dismissal? Well, I think it doesn't fit into a 1915G dismissal, which is... Dismissal. ...a dismissal. I thought you said the word dismissal. That's correct. But you can have a summary judgment of dismissal. I think, more importantly, Congress in the PLRA spoke to what a court should do in that situation. Under Section 1915E-2B of the PLRA, courts are required to dismiss on the basis of frivolousness, maliciousness, or failure to see the claim if one of those bases becomes apparent at any point in the proceeding. So if a district court is faced with a summary judgment motion, realizes at that point that the prisoner's case is frivolous, the answer under the PLRA is to dismiss under 1915E-2B-1, and then the order would be quite clear, and we wouldn't have to worry about whether summary judgment changes now. You're addressing the pragmatics of whether it's clear. Right. But I'd like to posit for you a situation where the court first considers the case under our motion for summary judgment, and it looks at the case and says, this is one of the most frivolous cases I've ever seen. There's just nothing to it, and I'm dismissing this case as frivolous. That's the order. And it... And you're saying that case does not qualify, and I'm not sure why it doesn't, because Congress said it has to be a dismissal, and it has to be for frivolousness, one of the three components. Right. If that were the order, if the district court had a summary judgment motion, and then the actual order said dismissed as frivolous, that would be a 1915E-2B-1 dismissal, and that clearly would be a strike under the statute. But that's importantly not what we have here. The summary... Well, that's fair enough. I just wanted to get the groundwork, and so you agree that if we have a summary judgment of dismissal that's frivolous, the court concludes as frivolous or concludes as malicious or concludes that it's failed to state a claim, then that could qualify if that were shown. It could potentially qualify. I think it would depend on... I'm not sure I understand your argument. Could the court say, I'm granting summary judgment because this is frivolous? Does that qualify? I think that's a tough question as to whether that qualifies, because the grant of summary judgment is a grant that the Rule 56A standard has been met, which is no genuine issue of material fact, and the movement is entitled to judgment as a matter of law. So that is the actual disposition. The frivolity reasoning, you know, isn't actually the basis for the order. But I do think that's a closer case than what we have here. The court says it is the basis. I thought it was frivolous when the opposing side made the 12B6 motion. I thought it looked frivolous to me, but I, just to give the litigant every benefit of the doubt, I moved on, let there be discovery or whatever else, and now I'm looking at it, I'm granting on motion summary judgment because I extended it to look at the facts, but now looking at everything, this is, as Judge Nemar said, perhaps the most frivolous case I've ever seen, and that's the basis on which I'm granting summary judgment. What if the court did just that? Would that be a strike? I think it likely would be. Again, I think that the better courts for the district court under the... How would we know that when we have to go back and look at what the district court had before? For example, in this case, these cases, all of them, that were relied on in the panel opinion, the district court and the magistrate judge, in fact, relied on evidence when they granted summary judgment. To go through each one of them, the state put on evidence, put on different deposition, different affidavits, records, and the court, magistrate judge or the district court relied on those when granting summary judgment. It added on to be sure in some of these cases it qualifies under the statute. Right. But in response to your answers, you didn't seem to... You seemed to say that that would be all right, and I hadn't understood that as your position. No, Your Honor. I'm sorry if I'm not being clear, but I think you're right. Our position is that you shouldn't look beyond the grant of summary judgment itself because it is a hypothetical, but you might have orders like in these cases where it's just summary judgment and looking... I don't think you understand Judge Martz's question as I understand it. She's asking if... But let me just ask you this question. I think you've answered it for me. Maybe she can have a conversation with you again. But if the order says, summary judgment order says it's based on frivolousness, then you would say that counts as a strike. You would not have to look beyond that. I think that is still probably under the PLRA not a strike because the PLRA specifically directs courts in that situation to not deal with motion for summary judgment, but to simply dismiss as frivolous, and that's the mandatory... Are those the only two options that are available in the statute? The PLRA says in no event shall a prisoner bring a civil action in those cases. In other words, dismissal is warranted is mandatory under those sections. That's correct. Doesn't a district court have the inherent authority to dismiss a suit as frivolous without having to read through every order? Isn't that exactly what Tolbert was saying in response to an identical argument raised by the government that the PLRA was not designed to introduce complexity. Right. It was designed to create clear rules for courts to follow. And courts have inherent authority in managing their caseload and residual authority under A1 to respond to frivolousness without having to go through every prior opinion to see if the magic words frivolous are used. That's correct. I mean, under the PLRA... I think though that in response, it seems to me that we read back the record, which we're not going to do here, because we only have a limited amount of time. But if we read back the record, I'm not sure your response to Judge Shedd squares with your response just now. So maybe you can try to marry the two for us. Sure. I mean, I guess what our position would be is that if summary judgment is granted, that should be the end of it. It's not a 1915G dismissal. And the PLRA provides specific mechanisms... You just disagreed with me earlier that summary judgment, the remedy on a summary judgment can be dismissal. It can be other things too. But dismissal is not limited to 12E6. But in 1915G, speaking only to specific dismissals, frivolous, malicious, or failure to state a claim, and none of that equates to a Rule 56 dismissal. Can I follow up on a question that Judge Duncan asked? I'm not sure we need to get into all this. Because as Judge Duncan's question pointed out, under 1915A1, there's a discretionary authority that resides in court to either grant or to deny IFP status. Now, the record of litigation abuse here is simply horrible. I mean, I've seen prolific litigants in my time, but I haven't seen anybody, at least not in years, that's filed this many cases, none of which has ever come to anything. And even if you take the facts in the light most favorable to him, there are nine recent cases filed that all came across. Now, under A1, quite apart from the PLRA, you can assume the PLRA doesn't apply for all the reasons we've done. But that doesn't get you IFP status. The Supreme Court in McDonnell, and later in Syndrome, 1989 and 91, said courts have inherent authority under A1 to deny IFP status to someone who has this kind of history of abuse. And when Congress passed the PLRA and didn't touch A1, it didn't touch it. And after McDonnell and after the amendment, the D.C. Circuit says in the Butler case, the residual authority remains. And it says that in Butler, it says in concluding whether a prisoner should be allowed to proceed IFP, we will examine the content and frequency of his litigation history. And the Supreme Court and the D.C. Circuit have indicated we have a duty to deny IFP status when you have someone that has abused the system in the way Mr. Blakely has. So quite apart from G, which presents a thicket of difficulties that Judge Niemeyer and Judge Shedd and Judge Mott have all explored, there's a quick way to get out of it all. Just assume, arguendo, that the PLRA doesn't apply, but that in the exercise of our discretionary authority, we can still deny IFP status to somebody in that background. Your Honor, I... Let me join in with Judge Wilkerson on that and give you a compliment. I want to compliment you on getting this case to an en banc proceeding of this nature for a client who has 40 cases before this court. For all the cases we have in this court, this is an interesting case to bring to an en banc proceeding. I've got to compliment you on that. It is amazing to me that it is here. And I join in with Judge Wilkerson with that concern because clearly in this case, there are at least four summary judgment actions in which those expressed words are said on the record. And nonetheless, you maintain that's not sufficient to... And because we're only talking about status quo in formal politics here. And Congress spoke. It wasn't me speaking. I might have said personally, I don't like any of it. But Congress spoke on this. And they had an intent here. And I of a case as opposed to the end result of whether these actions have been frivolous. Because if we're going to rely on procedural posture, think about the fact, if you're talking 12B6, if a defendant introduces an affidavit, you cannot dismiss it on 12B6. Correct? You've got to convert it to a Rule 56 matter. And if it's dismissed, then your position is not good enough. Well, so to take that question first, and then I can go back to Judge Wilkerson's question. We can ask Judge Wilkerson's question first. Or Judge Wilkerson's question first. That's fine. I certainly like to get to both of them. As far as the discretionary authority under A1 and the DC Circuit's decision in Butler, I think if you look at the Supreme Court's decisions in this area, since the PLRA was passed, they actually don't rely on the general discretionary authority under A1. They rely on a very specific Supreme Court rule dealing with frivolous filings. And I'll speak, I think, both to the general authority and to Mr. Blakely's history. First, as to the general authority, this Court obviously has inherent authority to manage its docket. I don't think it's necessary to reach out and exercise that kind of extraordinary authority in these prisoner cases. The Congress has spoken very comprehensively to how IFP status should work in these cases. There's four provisions that work together here. The first is 1915B, which is the baseline provision saying that even if IFP status was granted, the prisoner has to pay the full filing fee over time. Then there's obviously 1915G's three strikes provision. And then there's 1915A, which is the mandatory screening operation. I just heard you say that the Court shouldn't reach out. What's your position on whether or not the Court can do that? I think the Court probably can do it. Under the inherent authority? Yes. But in this situation with the PLRA, I think there's no need to do it. When would we ever do it? For the reasons articulated ably by Judge Wynn, I'd like to take us back to some language in Tolbert, an opinion of which I'm pretty fond. It says, the government has itself identified a possible remedy for prisoner abuse of IFP status. It has argued, and the D.C. Circuit has ruled, courts have a discretionary authority to deny IFP status to prisoners who have abused the privilege, even when three strikes are not present. So why would we require the district court in a case where there are these multiple, there is this pattern of what appears to be abusive filing, to parse those filings to see if the magic words of frivolousness were used. When the district court has the discretionary authority to deny a grant of C informal property. I think that exercising the discretionary authority actually also requires that kind of laborious parsing that's contrary to the PLRA because... On the basis of who has held that? Well, the D.C. Circuit and Butler adopted a test that you would use if you adopt the same test in this area where you have to look at the number, the content, the frequency, and the disposition of the filings. So that requires an intensive look at the person's entire litigation history to see not just the number, but also what the claims were about, how far they got, et cetera. And in Butler... It doesn't require parsing the procedural posture? It doesn't require parsing the procedural posture, but it does require parsing out the dispositions, parsing out the content, which could require looking beyond orders back to complaints, et cetera. And in Butler, for example, the D.C. Circuit held that there was a pattern of abusive filing because he had filed 25-something actions over the course of eight years that were all... Butler is wrong, don't you? I do think that. You said... So you want us to create a circuit conflict with Butler because you just said in your briefing that you think Butler's incorrect. I admire your candor. I don't think it's incorrect, but you think it's wrong. We do think it's wrong in light of the fact that the PLRA comprehensively speaks to these issues, gives district courts the obligation to dismiss cases as frivolous, malicious, or for failure to state a claim. And if... How can Butler be incorrect, or the Supreme Court statement be incorrect, when in passing on 1915G, the court left that discretionary authority in the term may in 1915A1 completely intact? And we have to assume that Congress, when it passed, the PLRA was aware of the Supreme Court's 1989 decision in McDonald that was aware of Sundrum, but it was aware of McDonald, which addressed that language. And Congress, being aware of the Supreme Court decision, left the language intact. Yes, Your Honor, it did. I think that, however, the PLRA does speak comprehensively to this area. And there are also other rules, Rule 11 in the district courts, Rule 38 in the courts of appeals, and the sanctions statute at Section 1927 that provide courts with a wide variety of tools to use to deal with frivolous litigation in the prisoner context without reaching out. I'm over here. I want to take you back to Judge Wynn's question. He posed a pretty interesting question. I'm going to follow up on it, maybe ask it this way. If someone were to file action that everybody in this room agrees is frivolous, and that person would file with his filing an affidavit, do you think that necessarily converts it to a Rule 56 if it's later dismissed? I don't think so, because even if there's an affidavit in 1915 capital A, the district court can simply dismiss for frivolousness in that situation and not have to convert to a motion. What if the district court relies on those affidavits and grants summary judgment and says it's frivolous? I think, again, even if the district court relies on the affidavits, it can still dismiss under 1915e. I don't think that that takes away the ability. Excuse me? The district court grants summary judgment on the basis of the affidavits and says the case is frivolous and, therefore, counts as a strike. I think, again, you don't actually have to do summary judgment. You could rely on the affidavit and dismiss under 1915e. If you do do summary judgment, then I think it's a close call, but it likely would be a strike. Isn't that exactly the situation you have here? It's not, Your Honor. The situation we have here is if you look at the order at JA210-211 as an exemplar, the actual order just says summary judgment is granted. In the next line, it is ordered that this case qualifies as a strike. If you look back to the analysis section of the decision, then you see the language that the panel relied on, which I think it's important to look at that language in context. Wait a second. I don't think I understand your answer, or maybe I do. Your answer is summary judgment can be used as a strike unless it's a close call? No, Your Honor. I think all of this goes to my main point. My main question is, I think you've answered it three times for me, maybe three times for the other side just differently, on the other side of the room, I mean. Do you think that sometimes a summary judgment dismissal that's clearly stated based on frivolousness can count as a strike? Your Honor, our baseline rule is that that couldn't count as a strike because the statute is very clear, and a bright line rule is mandated by the statute, and it's also easier to apply. What is that bright line rule? Summary judgment is not a strike. The rule says that? The statute says that? The statute says only dismissals for frivolous, malicious, or failure to state a claim, which does not include the Rule 56 standard. But you assume that a summary judgment can't dismiss a case. I don't understand that notion at all. A judgment of dismissal is a type of order, and you can have a judgment of dismissal, and you can have a summary judgment dismissal. And under Judge Shedd's hypothetical, if the court reaches the case in the summary judgment context and says, I'm dismissing this case because it's frivolous, is that a strike? That is a strike. That's a dismissal for frivolousness. But I think it's important to note we don't have language like that here. Even if it's on summary judgment. How do you do that if it's on summary judgment? If it's on summary, so in Judge Niemeyer's... Why don't you just plant your feet on the bright line rule? Yes. Why don't you just plant your feet with the bright line rule? The bright line rule. And a summary judgment cannot be a strike. She likes to dance. I mean, that's what you need for the bright line rule. I'm sorry. If the actual order in Judge Niemeyer's hypothetical is it is dismissed as frivolous, sure, that would be a strike. If it's summary judgment, I'm not trying to make a distinction about dismissals. I'm trying to make a distinction about the substantive standard. So summary judgment is the Rule 56 standard. That's different than frivolous, malicious, or fails to state a claim. But you don't even need to reach that here. Because here, all we have is some language in these decisions saying frivolous, malicious, or fails to state a claim. You can't tell which of any of those strike grounds is actually the same thing. Hold on for a second. Judge Motz wanted to... I have one question. I wanted to follow up on what was asked earlier and I haven't been able to get a word in. And that is, when you were asked about the other portion of this statute where we could just use our own discretion to dismiss, were you directed to brief that argument? I thought that we told you that you were confined to the PLRA Free Strikes provision, to JA-188. Is that correct? That's correct, Your Honor. And then the athletes raised the Butler argument in their opposition for the first time. But the court's direction says you're only to talk about this. That's correct. But this other was... We can affirm, Your Honor, we can... This other was discussed in the briefs. It's being discussed in the oral argument. We directed you only to reach the PLRA Free Strikes. It was then brought up by the other side in the briefs. And I do think that if this court is properly teed up, the panel didn't decide it, and athletes haven't presented the court with an actual detailed record of Mr. Blakely's filing history. So I think he would certainly be entitled to notice of what was being considered. Isn't this meant for the exercise of our discretionary authority? I mean, you admit to having filed at least nine cases in federal courts. There's a range between nine and 40. I'm willing to take the thing that's most favorable to you. If someone with this litigation history, we can't exercise our discretionary authority under A1, we're just losing control of that court. There's two answers to that question. Number one is that even under the D.C. Circuit's test, the number of filings is not the only consideration. It's the disposition, frequency, and content. And if you contrast Mr. Blakely's history with Mr. Butler's history, they're quite different. Mr. Butler had filed about 25 cases in eight years that were all about the same thing. They were all a FOIA request seeking essentially the same release. And he was also voluntarily dismissing cases and essentially in an effort to evade strikes. Mr. Blakely here, appellees have pointed to approximately 40 cases over about a 17-year time span. Many of them went to summary judgment. Some were removed from state court. They were about various topics. So it's very different. And he's letting them go to disposition. So it's very different from a filer who is constantly seeking the same release and also trying to gain the system by seeking voluntary dismissals. Just tell me if you could just take a step back and look at the statute as a whole. And I'm interested in your comparing the provision of A-1 with G in the context of the fact that A-1 is a grant of authority to the court. Isn't that correct? That's correct. And G is a limitation on the prisoner's right to file. That's correct. G is not a limitation on the court's authority. Right. And so it simply serves as a restriction of the prisoner's right. So how could G then restrict the court's authority when it doesn't speak to the court's authority but merely speak to the prisoner's right? I don't know that G actually restricts the court's authority. I think our argument is more of a prudential one that Congress has spoken to very specific types of cases that it thinks should prevent a prisoner from going forward with ISP status. I agree that G speaks to a limitation of the prisoner's right. Right. And it does not speak at all to the court's authority. I think that's right. And then if you go beyond that, I guess our point is that with the scheme of the PLRA, if courts use 1915-E and 1915-A and dismiss cases as frivolous, malicious, or fail to state a claim, prisoners who are abusing the system likely will get to three strikes fairly quickly, and so there won't be a need to use this more free-floating power. You also have the federal rules for sanctions and dealing with frivolous filers that could supplement the PLRA mechanism. I thought in response to Judge Keenan's question that you'd been arguing in your submissions to the court that G was some sort of exclusive mechanism and that the only authority that the court had was under the PLRA, and that if someone wasn't knocked out under the PLRA, that that was the limit of the inquiry. We did make that argument, and I think there's a technical argument that G is more specific and comes later in which from A, but I think Judge Keenan makes a good point that A is still there. Did Judge Keenan's question just explode that argument? Yes, and that's why I'm not pressing that exact argument here, but I am pressing that you shouldn't recognize it as more of a prudential matter because there's just no need to do it in this context, and Congress has spoken very specifically as to the types of dismissals that should be counted as strikes, and I don't think there's a need to go beyond that because if the PLRA works as it's meant to work and district courts do dismiss on those cases... I don't think it's what Congress is trying to do with these cases. Do you really think that Congress had in mind that someone with this particular history, and we can dispute the particulars of it, did Congress have in mind in passing the PLRA or in passing Section A1 or anything in 1915 that this kind of litigant ought to be granted the privilege of ISP status when, as Judge Wynn points out, we've got hundreds of other cases where people haven't abused the system and may well have some merit to their claim? Did Congress really intend for this sort of litigant to be the subject of an exercise of the court's grace? It may not have, but it also put in place mechanisms that courts are required to use if they think that the prisoner is bringing frivolous, malicious suits or suits that are without merit, and those are the mandatory dismissal provisions of 1915E and 1915A. If those are used in prisoner cases, those prisoners who fall within those categories will get to three strikes pretty quickly, but we don't have orders like that here. We don't have the... I've forgotten what they called it in the D.C. Circuit. I know the PACER evidence of any strikes beyond the strikes that are in the record in this case. But in response to Judge Wilkinson's question, I'm not sure that the two are mutually exclusive. I mean, you could have a holding from this court that we can't disqualify him for IFP under the statute, but we use our own discretion and will. I mean, that's entirely possible. Now, we asked you to only brief the IP status. That's correct, and I don't think that you could reach out to exercise discretionary authority without giving Mr. Blakely notice of which cases the court would be considering for those purposes and other cases where this court has imposed filing restrictions that's given the litigant notice and an opportunity to be heard. And I don't think this is the appropriate case to address it because, as Your Honor points out, it hasn't been fully briefed. There isn't a full record. The panel didn't decide it. And so for much the same reasons that the Tolbert panel declined to reach the Butler issue, I think that's the prudent course here as well. Sonja, let's get back to Tolbert because we haven't talked about it too much. And I'd like you to help me with this. When I look at the Tolbert decision, I see Tolbert discussing Duda and Mung first. And Tolbert said that Duda and Mung do not count as actions, excuse me, do not count as strikes because there is a voluntary dismissal in each one of those cases, partially. And so by the time the court had addressed Duda and Mung, the case was over. It didn't matter what happened in Lightseed, the court's analysis of Lightseed, because there was no way that there could be three strikes. Isn't that correct?  They could have chosen to address Lightseed first, so really any of the three could be necessary to the decision. They didn't. Since the case was really over, there couldn't be three strikes on that. Once Duda and Mung did not qualify, then isn't the language on which they're relying on Tolbert simply dicta? I think it's arguably not because again, one of those three cases would end up being dicta. It's the order that they decided it in. But I think more importantly, even if you view it as dicta, I think it's correct. Every circuit that we've been able to find that's addressed summary judgment has held that it's not a strike and hasn't looked beyond that. And I think that- And even if it wasn't dicta, we're sitting on bank now. Sure. I mean, it's not- So we look at the rationale for Tolbert, not the holding doesn't bind the on-bank court. Yeah, the dicta question is a little bit irrelevant at this point. But the courts of appeals that have addressed the issue have all held that summary judgment isn't a strike without looking further. And I think the conversation we're having about which types of summary judgment orders might be strikes versus not just show that doing that kind of analysis is contrary to what Tolbert and the Third Circuit recently recognized in Byrd as a core purpose of the PLRA, which is to conserve court resources. The more you have to parse orders to try to figure out what was going on- Please, please. Sorry, you go, you go. Courts parse orders every day. That's our job. We've got to read these cases. And I don't understand why in a prisoner's case we're more reluctant to parse orders. That's what we're hired to do. I'm sorry. So I don't understand how this argument for efficiency carries today, because I don't see the prisoner's case as any less worthy of review than another case. And it seems to me that that's the natural result of your argument here. If I can add to Judge Keenan's question, if the dismissal order as a 12B6 says frivolous or failure to state a claim, and the order entered in a summary judgment procedure says on its face exactly the same thing, what parsing difference is there? I think it's more of a slippery slope. So once you say you can look to some language beyond the order, then you have litigation about what language you can look to, what different things mean. And I don't think that... But wouldn't you have to look to... Wouldn't you have to parse in some Rule 12 dismissals? Wouldn't you? Well, if you had a Rule 12B6 dismissal, that would obviously... I said Rule 12 dismissal. Do you think the statute is limited to... When you say it's limited, you think it's limited to 12B6 only? No, I don't think so. Okay. So in other words, if there's a Rule 12 dismissal, wouldn't you have to parse? To see what the basis for the dismissal was under Rule 12? I don't think so, Your Honor, because I think the basis for dismissal, as the Third Circuit recently recognized in its third decision, would be Rule 12B6. I know, but you're missing the point of my question. What if the court below, we're looking at a case below, and the court said, I'm dismissing your action under Rule 12. Does that on its face automatically count yes or no? It does not count. Could it count? I don't think so, Your Honor, because I think the point of the PLRA... Well, let's get this clear. From everything in the record, everything that it was a 12B6, the court just said a Rule 12. Would it count? Can I ask, answer Judge Shedd's question, and then I want to move on to the opposing argument, because you've got some rebuttal time, and if we have further questions, we can ask you of it then. But answer Judge Shedd's question, and then let's move on. My question is, wouldn't Rule 12, under your argument, require parsing sometimes as well? No, we would say you shouldn't parse. I think you should just say it's Rule 12. It's not clear from the order you move on, and that's because in this context, when courts are dealing with IFP applications, they should be able to tell immediately from looking at the order whether it's a strike or not. If you can't tell, then you shouldn't look further than that. Thank you. All right. Thank you so much, and you've got some rebuttal time as well. Thank you, Your Honor. Um, Mr. Citano, we'd be pleased to hear from you. May I please report? Your Honor, you've just heard the appellant argument that there is a bright-line rule that summary judgment does not constitute a strike under the PLRA. It is our position that under a plain reading of 1915G, and I'm looking at the congressional intent and looking at the prior case law in this circuit... I thought you were doing a plain reading of the statute. They wouldn't look at congressional intent for the prior case law in this circuit, right? If you look at all of it, Judge. But I thought you just started out with, which is what the Supreme Court always tells us to do,  Yes, Your Honor. Okay. Plain reading of the statute. It's not the procedural posture at dismissal that determines what constitutes a strike. Where does the statute say that? Your Honor, the statute says, a case was dismissed on the grounds that is frivolous, malicious, or fails to state a claim. And doesn't say anything about summary judgment? Upon which relief can be granted. Yes, Your Honor. You quarrel with whether dismissal is a word of art, but you would acknowledge that dismissal for failure to state a claim upon which relief can be granted is a word of art, wouldn't you? I would if the words frivolous and malicious weren't in that. No, no, I'm just asking those words. Yes. Dismissal for failure to state a claim upon which relief can be granted. We all know that's the language of 12B6. There is no dispute about that. Yes, Your Honor. So why would- You got an order. You got an order. Right. So why would the other two things be different in kind from the 12B6 motion? The frivolous and malicious? Yeah, why would they trigger summary judgment in the way that we clearly know 12B6 doesn't? We don't have any reference to summary judgment in the statute. So I'm going to your, the plain language of the statute argument. Judge, I think I'm jumping way ahead of my argument here. Well, you started out with the plain language of the statute. Yes, Your Honor. All right. One of the many Blakely cases, Blakely versus- Well, the plain language you'd have to lose, would you? You've got to stretch the plain language. You can't deal with the plain language and prevail here. The plain language you lose. You've got to read the conventional majority of the court that you read summary judgment into that language. Yes, Your Honor. That's it, which is not in there. I mean, it's not in there. We all know it's not in there, but for you to prevail, and you might well do it. You got to read summary judgment into it. Isn't that right? Yes, Your Honor. So you'd have to rewrite it. I'm not saying rewrite. I don't understand that. You can dismiss a case at any stage, 12B1. Yes. A 12B1, no jurisdiction, that is frivolous. A case brought, and the court says, this is the most frivolous case I ever saw. We don't have jurisdiction. Do you think that that would cause- Just a minute, but can I finish the finished thing? Is a dismissal that's frivolous. The court can likewise, on summary judgment motion, dismiss the case as frivolous. I agree with that, Your Honor. The court can, on motion for judgment on the pleadings, dismiss the case as frivolous. Yes. I don't understand why you concede that the statute has to have summary judgment, has to have a motion for judgment on the pleadings, or a motion under 12B6. If that's the way it came across, I misspoke. That's not what I concede at all. I didn't think that was- No, Your Honor. Here's- Well, on a summary judgment motion, you say you could dismiss it as frivolous. Okay. Yes. Then you got to say that summary judgment comes in there, or dismissal is something different, or not something different. If you dismiss it as frivolous, you dismiss it as frivolous. That qualifies. You can have a summary judgment that has full discovery, 100 affidavits, and whatever, and the judge not consider any of that. Doesn't have to consider the summary judgment evidence, but dismiss the case as frivolous, or dismiss the case for failure to state a claim. I would think, and you could argue that would qualify. There are other criteria that would qualify, but if you have summary judgment, that's a different deal. You're under Rule 56, and you've considered all that stuff. Judge, I think the key here, and getting right to the point, it is the definition of dismissal. It is, does dismissal count at directed verdict stage? That's not what you've been asked, and that's not what you answered. Does the statute, by reference, say Rule 12B6? Does it? Yes or no? No, it doesn't. Does it say summary judgment? No, Your Honor, it doesn't. Do you think that you could have a summary judgment based on failure to state a claim? Yes, I think you could. I think you could have it on frivolousness or maliciousness, too. Mr. Simpson, do you agree that Subsection G is a restriction on the right of the prisoner, and not a limitation on the authority of the court? It's definitely a restriction on the prisoner. I'm not sure it's a limitation on the court. It's not a limitation on the authority of the court. Why does all of this matter? In other words, if it restricts the prisoner and says, prisoner, you can't do it, you can't do it under these circumstances, it doesn't say anything about what the court can do. It doesn't. In its discretion, it doesn't say a word about limiting the authority of the court, so I guess they should talk. I mean, why are you so worried that in the analysis on the statement, that it's a market case? I'm not worried about my argument, Judge. I know, and I'm just, well, they're not getting it out. Well, I'm substantively pleased to judge in this question because I share what I think is an underlying sense of perplexity about why you have to hang your hat on G when it appears to me that if we agree with your current view that we create a circuit split. Your Honor, we have 1915 at large A, we have 1915 E, we have 1915 G, all enacted by Congress. Congress knew that all of these different rules existed when they enacted them. Each one is meant, theoretically, I guess, to solve a different problem or address a different circumstance in the litigation process. 1915 G is the third hurdle they set. They've got the exhaustion hurdle, they've got the court's discretionary hurdle for dismissal for failure to state a claim, and then they did the strike hurdle. This is the strike hurdle. This is the one where, all right, you get by those other two and you file multiple frivolous lawsuits. Let me follow up on what Judge Keenan and Judge Duncan are saying, because I wish to associate myself with their views, and I think that they're heading in exactly the right direction. It seems to me that in getting to this business about whether a summary judgment order counts or whether a summary judgment order doesn't count under G1, that we're entering a real briar patch and some circuit splits on that point. But why do we need to even decide whether the PLRA applies? Why can't we assume arguendo that it is not disqualifying and then move directly to the permissive language in A1, which resolves the summary judgment point for you because a court, maybe the summary judgment order counts as a strike, and maybe it doesn't. But if you go to A1, a court can certainly take into account the language of the summary judgment orders in exercising its own discretion. And the fact that the summary judgment orders were so negative to the petitioner's position and said, these are frivolous and these count as a strike and everything, well, whether it formally counts as a strike or not, it certainly can weigh in the court's discretion what the district court thought of those actions and lead to the exercise of our own A1 discretionary authority. Each court has to be the gatekeeper of its own docket. And the question I have is regardless of whether a summary judgment does or doesn't count as a strike, the district court found all these cases were frivolous. There's an extensive history of litigation here. And while we may quarrel over the particulars, it seems to me this is the perfect example of what Congress was getting at through this whole series of statutes. And why doesn't the court just cut the Gordian knot and have the authority to say, no, this person is undeserving of IFP status and we can look at the summary judgment order as one factor which weighs in our discretionary denial. Judge, I would not argue against that. But I would argue my only point there would be, I think if you look at the PLRA, that is one of the, I'm looking for the term, one of the mechanisms Congress has given the court. I think 1915G, which we're here about, is a second mechanism. But the PLRA is tricky, okay? You've got some very good judges with different views, different questions coming at it from a little bit different perspective. And they each have a good perspective to bring on it. But don't you sidestep all those thorny problems if you go back to A1. And we've got support from the Supreme Court in Sindram for what we're doing. We've got support from the Supreme Court in McDonald for what we'd be doing. We've had support from the DC Circuit in Butler for what we'd be doing. We'd be not creating a circuit split this way, whereas if we go deep into the PLRA, we're going to be creating circuit splits. But the fight doesn't have to be fought here if given the court's residual authority and given the fact that both Judge Keenan and Judge Duncan have emphasized that these two statutory provisions operate in very different ways. Mr. Cepeda, is Judge Wilkinson right in his description of these cases that the judge found each one frivolous? Not each and every single one, no, Your Honor. Exactly. There was not... If I draw your attention to the summary judgment order mentioned by counsel for appellant at pages 210 to 11, I realize you don't have this material up there, but in fact, the district court used in quotes the boilerplate language taken directly from the statute, didn't she? She doesn't find that this action and each claim asserted in there is frivolous. In fact, she says it shall constitute a strike as, quote, frivolous, malicious, or fails to state a claim upon which belief may be granted. Does that tell us that she found something frivolous? That's her order, Judge. That's her order. What did she find? In fact, she discusses at some length, and this is back in 1999, he purported to bring an ABA claim as an inmate and he asserted that he walks with the king. And there are these claims that he can't take a shower, he can't get to his legal material. What is the difference in your judgment between a claim that lacks merit and a claim that is frivolous? Those aren't synonymous, are they? No, they're not, Your Honor. What is the difference? I don't have it here. There is a definition of frivolous, Paul. I don't have that here with me. But in that case that you just cited to, that is the most egregious of them all. He wasn't disabled. He followed the... But if we started counting as frivolous, ABA claims in the 20 years that the statute has been on the books, the times we have held that a person wasn't disabled, if we call just because they're not disabled, frivolous, and there've been a lot of frivolous claims that we've killed a lot of trees to explain why that litigant loses. Just because a person fails to prove a claim, to say nothing of failing to allege a claim, doesn't make the claim frivolous. It makes the claim meritless. And this statute does not authorize a court to deny IFP status because a prisoner brings a meritless claim. And most district judges that I'm familiar with know the difference and the different amount of work it takes to identify a frivolous claim compared to a claim that is without merit. Don't you agree with that? I absolutely agree with it. My argument is not that all summary judgment dismissals are frivolous, malicious, or fail to state a claim and thus a strike. That's absolutely not my argument. My argument is that when the district court finds that, then they are a strike. But the district court in the order we were just discussing recited that, but there's no finding. So how do you tell the difference? Is it enough for a district court to include the statutory language in her order? Is that what you're calling a finding? Yes, Your Honor. The judge had in that case... Frivolous, malicious, fail to state a claim. Your submission is that's all that's required. If the district court judge who's examining all of the record and looking at the affidavits, and in that case, the medical records, finds that Mr. Blakely was frivolous and malicious because he didn't have an ADA... Where is the finding? A recitation of statutory language is not a finding. Surely you agree with that. I disagree that Judge Seymour in that case did not make a finding that this was... Where is the finding? Give me the page site. I don't have the page site, Judge. This goes far beyond the... Excuse me, Judge Davis. I didn't mean to... Judge Dunson. Doesn't that underscore precisely the difficulty inherent in your view that it's the reason for the disposition and not the procedural posture that governs? What if the district court says, I find this case to be completely lacking in merit? Is that frivolous? The district court will obviously know the PLRA is out there. It's a yes or no question, and then you can explain. Oh, yes, Your Honor. Lack of merit, is that frivolous? No, it's not frivolous. So there are their magical... So there are apparently, in your view, magical words that the district court has to use if a grant of summary judgment is going to be a strike? Yes, Your Honor. In terms of our, in the statute, frivolous, malicious, or failure to state a claim upon which relief can be granted, that has to be used. Okay. So in that order, frivolous, malicious, or failure to state... Or one... We have that. We know that that counts as a strike. Your Honor, it'd be my position if they had just one of those, it would count as a strike. If the judge just found it was malicious, it could count as a strike. It's set off by or. Sorry. Go ahead, Judge Dunson. I'm sorry. Thank you very much. In response to my friend Judge Davis's question, this is not your ordinary summary judgment motion. I mean, summary judgment disposition. A great many summary judgment dispositions do not recite 1915 G language. This one did. And I think it's fair to take that language as a whole, that the district court's recitation of that language had a purpose. She put it in there for a reason. And the reason was that her impression of this was that the suit didn't amount to anything and that it was beyond being simply meritless. It was either frivolous, malicious, or failure to state a claim. And you're right, it's a term of art which a district court can use under the statute as saying, I don't think much of this at all. And she went and took that step. But the whole point is, we don't have to decide that particular issue about whether that language is a strike or not. If you look to the court's discretionary authority, and we can say, we do take that language to be a negative comment upon the type of suits that are being brought by this particular litigant, that they're not substantial and all the rest. And we can take notice of the district judge's appraisal of that in assessing a litigant's history and in using our inherent authority to deny ISP status and not getting into the difficult semantic questions that the members of the court are posing. MR. BLAKELEY. Your Honor, I don't disagree. I don't want to do anything to discourage the court from dismissing Mr. Blakeley's cases as frivolous. MR. TANNER. Mr. Satana, doesn't the answer to that question depend on what the judge, how the judge wants to exercise his or her discretion? MR. BLAKELEY. Yes, Your Honor. MR. TANNER. If the judge wants to, the premise of that question is, that the language that we're looking at, frivolous, malicious, a failure to state a claim, if the premise of the question is, it doesn't matter because the judge is going to dismiss it anyway. But doesn't that question? Require that premise? That the judge wants to get to the same result as you would read the statute? MR. BLAKELEY. Yes. MR. TANNER. What happens if the judge says this, I can read the section we're discussing, and under that section, I would, if it had been decided, and I would have to do it, that's the only reason I'm going to do it. On my own discretion, I will not count it as a strike. Doesn't the statutory language matter then? MR. BLAKELEY. It does, Your Honor. And it gets back to, Mr. Blakeley, in his pro se motion for reconsideration before this court appointed counsel, actually stated in there, that after he had these multiple strikes we're arguing about today, he quit filing for seven or eight years. And then when he was appointed counsel and we started briefing this, he has refiled eight new lawsuits in federal court in the last year and a half. This is why the strikes exist, and that's my argument. I don't want to say that, no, 19A shouldn't be applied, discretionary. I'm fine, I agree with that. But the strikes prohibit and prevent. MS. TAYLOR. Well, the strikes, that's the mandatory provision. Someone can't, there's no safety valve for that provision. In no event shall a prisoner bring a civil action in that circumstance. I quibble a little with your characterization of that as a hurdle. That's a full stop. And there is, Judge, to use your term, there is one minor, not minor, but one safety valve in that if the inmate is in imminent danger of serious physical harm, then the strikes don't matter. MS. TAYLOR. Correct. So, yeah, so there's, the judge retains discretion even under that to not allow that to impose an absolute bar. MR. TAYLOR. Once again, Judge, I think the idea is to inmates who can just file as many lawsuits as they want, they have to evaluate it like the rest of the citizens do and say, am I going to waste my strikes? Am I going to waste my time? MR. TAYLOR. Actually, they're worse off than other indigent citizens, aren't they? They're a lot worse off. Because an IFP granted to someone who is not an inmate, he or she doesn't pay a cent. The entire $455 or whatever it is under sequester, filing fee in district court is forgiven, generally speaking, to an indigent litigant. If Congress saw fit in its wisdom to say, to change the definition of IFP in effect, prisoners pay regardless, right, down to $10 a month in their trust accounts for as long as they're incarcerated, the warden is making a deduction and sending it to the court. So it's not true, is it, that all IFPs are equal. You agree with that? MR. GONZALES. Judge, I'm not knowledgeable enough about the average citizen in the IFP to, I've just never encountered that, honestly. I do know why Congress enacted this. It's so that they have to look before they file and say, is this worthy of being filed? MR. THOMPSON. Because they're going to have to pay regardless. MR. GONZALES. And, Judge, once again, I go back to not every summary judgment is a strike. MR. THOMPSON. And by the way, prisoners pay for strikes, right? If a district judge dismisses a claim for failure to state a claim, that deduction from the prisoner's trust account continues until the entire filing fee is paid, correct? You do know that? MR. GONZALES. Yes, Your Honor. MR. THOMPSON. All right. MR. GONZALES. Yes, Your Honor. Looking to see where I have. Judge, I want to go back to- MR. THOMPSON. You don't have to use all your time. MR. GONZALES. I understand. I think the arguments have been made, Your Honor. I want to address the one thing about whether or not 1915G applies to summary judgment. I think the panel stated it perfectly the first time. If you look at Black's Law Dictionary, dismissal is the termination of a case sometime prior to a judgment. As we go to trial, as you all know, when a judge dismisses a case, he says case dismissed, whether it's directed verdict, summary judgment, 12B motion. MR. THOMPSON. You agreed with me earlier. If you look at the plain language of the statute, the dismissal for failure to state a claim upon which release can be granted, one of the three reasons why you have a dismissal here cannot be on the grounds for summary judgment. That's a word of art. That's 12B-6. MR. GONZALES. But 12B-6- MR. THOMPSON. Do you agree with Judge Motz on that? MR. GONZALES. No. MR. THOMPSON. You don't agree with her. MR. GONZALES. I don't think I understand the question. If I understand the question right, then I would. And let me explain how I- failure to state a claim upon which relief can be granted, that's only one of the three reasons here.  MR. GONZALES. But that cannot be on summary judgment, cannot. MR. THOMPSON. I've made that motion many times on summary judgment. MR. GONZALES. And I've seen it  MR. THOMPSON. No, I would argue that- MR. GONZALES. No, no. You answered my question earlier in the argument. You answered my question that a summary judgment  on the basis of failure to state a claim. MR. THOMPSON. Yes, Your Honor. I've made that many times. MR. GONZALES. The Supreme Court granted it in a famous antitrust case, summary dismissal on summary judgment. MR. THOMPSON. Those language about failure to state a claim upon which relief can be granted, is not a word, a term of art, in your view. It doesn't trigger us right into 12b-6. MR. GONZALES. I think it is a term of art, but it does not trigger us right into 12b-6. MR. THOMPSON. But you were looking into plain language. MR. GONZALES. Are you abandoning  You have to abandon it. MR. THOMPSON. No, I'm not. MR. GONZALES. You have to abandon the plain language argument. Under plain language argument, the summary judgment is not there. Congress could put it there. MR. THOMPSON. Congress could put 12b-6 there. MR. GONZALES. But judges shouldn't put it there. We should not rewrite statutes. That's what they call judicial activism. They talk about judicial activism, judicial activism, and the best example anybody can come up with that is rewriting a statute, adding language to a statute. And you want us to add words to this statute that say summary judgment. MR. THOMPSON. I absolutely do not, Judge. I, 12b-6 is not- MR. GONZALES. But you are using the context of a plain reading. Plain reading says nothing about summary judgment. It says dismissal. MR. THOMPSON. Judge- MR. GONZALES. Nothing about summary judgment. Let Congress fix it if you don't like it. MR. THOMPSON. 12b-6- MR. GONZALES. In the Federal Rules of Civil Procedure, do the words failure to state a claim upon which relief can be granted appear other than in Rule 12b-6? MR. THOMPSON. No, Judge, they do. That's the only place they appeal. But you know what doesn't appear in 12b-6? Motion to dismiss. The word dismissal doesn't appear there. I actually was kind of astounded by that because I always refer to 12b-6 as a motion to dismiss. It says, no, that's a defense that can be raised on motion. MR. GONZALES. Why isn't the simple answer to the question? Because there are arguments that go back and forth. But by using the words frivolous and malicious, as I think Judge Shedd and Judge Demeyer's questions pointed out, that Congress deliberately broadened the basis for dismissal beyond the simple term of art failure to state a claim. There's not just one term of art there. There's the terms frivolous and malicious. MR. THOMPSON. Yes, Your Honor.  MR. GONZALES. And I think Judge Shedd's question really pointed the way on this, which is that a case can be found to be frivolous on summary judgment, or it can be found to be malicious on summary judgment. That may not be apparent at the very outset of the case, but as Judge Shedd mentioned, the district judge may have given the litigant the benefit of the doubt. But the point is, you've got the arguments. You've heard the back and forth and the rest. My point is, isn't there a way to avoid all this and the difficulties attendant to it by exercising the discretionary authority of the court? And I can guarantee you no one would find it an abuse of discretion. MR. THOMPSON. I'm not, as I've said three times, Judge, I do not disagree with you on that. MR. GONZALES. Well, we would have to find that there is a record here upon which to say that this is a valid strike.  MR. THOMPSON. Yes, Your Honor. MR. GONZALES. Just as the D.C. Circuit said. They said there are 40 or some number of case or cases that demonstrate that. And the only record you have are these nine. You talk about others. But the only records we have to look at are these nine. And as you pointed out to us, some were many years ago. One is frequent, is recent. And so we'd have to say on the basis of that, that we're going to exercise our discretionary jurisdiction or discretionary choice here. MR. THOMPSON. Yes, Your Honor. And the reason we didn't broaden beyond the nine, and I actually want to call it eight. I think we've already conceded at one point one of these nine. But the district court did not use the terms of our frivolous, malicious, or failure to state a claim. And so there's eight. And we looked at the eight and we said these eight are representative of the multitudes Mr. Blakely has done. And if we don't win on these eight, we're not, it's not worth going back through the other 30 of those cases. And that's why we're looking at the eight. MR. GONZALES. But some of these are undisputed. You have those eight orders. You have the language of the orders. And some of the other statements that are made about the prolific litigation history are not disputed. He doesn't point to a single case that has come close to success. And the litigation history here, which he had every opportunity to dispute, isn't that. Now, we could ask to put, you know, supplemental briefing and create a record and everything. But at some point, you'd say, did Congress really want us to churn and churn over something that at the end of the day is simply a threshold issue? We're not getting to the merits of any fact. The whole purpose of the PLRA in 1915 generally was to decide these things with a sort of minimum of fuss and to cut down on litigation. And now we have the in-bank hearing and the prospect of going doing more and setting a record and everything. It's exactly the opposite direction from everything Congress intended 1915 A1 or G and the whole collection of statutes to do. It's the whole exercise is it cross purposes with congressional intent. As it stands now, yes, but it did preclude him for seven or eight years from filing lawsuits in federal court where he went on filing in state court who doesn't have equivalent law. But I understand, and Judge, don't think in any way I want to argue that you are not allowed to use discretion to find the frivolous. I think the importance of the strike rule is it stops them at the front end of the case from filing before the marshals have to serve the lawsuit, before the defendants have to hire counsel. That's the benefit of having the strikes just versus the court discretion. But it seems to me the statute itself on its face, taking the language of the statute, allows the court to dismiss the case for frivolousness at any stage. Yes, Your Honor. And if it is during the course of a summary judgment, it concludes this is the worst case I've ever seen. There's just nothing here. And I conclude this is frivolous upon frivolous. That would be a strike, wouldn't it? Yes, Your Honor. Thank you, Your Honor. All right, thank you. We'd be happy to hear from you in rebuttal. Thank you, Your Honor. I'd like to make two points about summary judgment and one about the Butler discretionary authority. First, as to summary judgment, our position would be if you have an order that says summary judgment is granted, that's not a strike. If you have a case that's dismissed because it is frivolous, because it is malicious, because it has failed to see the claim, that would be a strike. That latter situation is what we don't have here. Let me ask you something. You know, I accused you probably with too harsh language of dancing, but when we were debating this, when you were first up, you conceded that in some circumstances, if the summary judgment presented the situation where the court concluded the case was frivolous. Just out and out frivolous, you conceded that would be a strike. But that the problem was to scrutinize the orders and scrutinize the cases, and the purpose was to get more at the outset. The question I have is some prisoner complains about the medical condition, and the judge says, well, file your affidavits and let me see what we got. And they take the case on summary judgment and they first hear the case. And the guy talks about not getting a comb or the shower temperature is too hot or too cold or something like this. And the judge concludes at the end, he says, this is just totally frivolous. This is not a claim for cruel and unusual punishment, and says so in the order. And you're saying because he found it frivolous at the summary judgment stage, that now we can't count it as a strike. No, Your Honor. And I'm sorry, if that's the way the argument came across. Our position is, you can go through that process as a district court. And if at that stage, you determine it's frivolous, you can decide it then. And you should dismiss it as frivolous under 1915E, which requires you to dismiss on that basis at any time. So we're not saying you can't go through that process. Excuse me. What if I just in my order, I have before me a summary judgment motion, and I'm a district judge, and I'm looking at the case for the first time, but I'm considering these affidavits. And in my order, I'm not using the statute. I'm just going to conclude this is just out and out frivolous, and I say so. If you just say- It's just frivolous. And as a matter of fact, I'm trying to state it as emphatically as I can as a district judge. And I say, this is as frivolous a case as I've seen in several years. And I'm throwing it out in the summary judgment order. And yours are suggesting that Congress did not reach that order. Because it was in the summary judgment context, even though the court dismissed that as frivolous. I think Congress reached that in that it gave the district courts the mandatory obligation to dismiss that case as frivolous, leaving summary judgment aside, even if the case gets to the summary judgment stage. And I think that's what the Third Circuit was getting at in its recent Byrd decision, when it said, we're adopting a bright line rule here. If the case is dismissed because it's frivolous, malicious, fails to state a claim, or dismissed using a statutory or rule provision that equates to one of those things, it's a strike. And that cuts down on the need to look through these things and try to figure out what was actually going on. So it concerns court resources. Would you agree with Justice Davis that it's not enough simply to recite the magic words, that there has to be some explanation in the record? Yes, I would agree with that. And that goes to- Do we have that here? We don't have that here. What we have here is simply an order that says summary judgment is granted. If you look back into the decision, we then have a statement that this case qualifies as a dismissal for frivolous, malicious, or failure to state a claim. Does the judge have to pick one of those? Is it enough simply to recite the magic words and let us figure it out? It's not. It's in the disjunctive. So you can't tell which, if any, of the three grounds was actually met. As Justice Davis pointed out, if you look further back in the decision, the court discusses failure to offer evidence, et cetera, things that- Well, naturally, in each one of these cases, the district court or the magistrate judge, blessed by the district court, actually relied on the state's evidence. Right. And in this case, there were, what, 27 exhibits that the state put in. That's right. And that's a standard- True summary judgment. Exactly. It's a standard summary judgment analysis. He didn't allege this. He didn't prove this. Yes. And I would point out that where- Talking about what a litigant didn't prove sounds to me like you lose because your claim lacks merit. And that's- Failure of proof. That doesn't equate to frivolous or malicious. Or failure to state a claim. You didn't prove something. Right. That's a standard summary judgment analysis. And simply quoting the language of Section 1915G doesn't turn it into something else. Importantly, the court didn't- Sure. You know, these cases, it's all about access to courts and justice. And we're the 50th anniversary of Gideon Court's landmark access to counsel. My question is about your bright line position in terms of, could it be unintended consequences that you really hurt prisoner litigation in that sense? Because if we say, as you urged us to say, is that, listen, you can say frivolous, malicious, whatever. If you say summary judgment, that is categorically not a strike. Wouldn't that just urge courts, rather than looking deeper into those questions like ADA or like health issues, and just say, no, I'm going to do it right now. 1915 out of here strike. Wouldn't that encourage that? I don't think so, Your Honor, because that is the scheme. First of all, that's already been put in place by the PLRA. So it exists already. And I also think that we can trust district courts to give each case its day and to really evaluate the merits. They didn't say that it's malicious and frivolous, and they just say summary judgment. What? I don't understand. What do you mean? Can't they do that anyway? Excuse me. Can't they do that anyway? I mean, the district court has the authority. It doesn't have to go through that analysis to deny informal proper status, does it? I think the baseline is that it should go through that analysis because any remaining authority under A1 is residual. Otherwise, there would be no need for the three strikes provision. But I don't think it's going to. Judge Gregory, I want you to answer his question. You haven't answered my question at all. Yeah, I don't think it's going to encourage district courts to just say this is frivolous or this is malicious. I do think that district courts will go through the appropriate merits analysis. But when they do, you know, no good deed goes unpunished. You're going to say, well, you went too far because you have to rely on the prison system and their affidavits because we're going to find out whether or not you in fact need access to get to where you need to go and whether or not they denied health care to you. Instead, you say, well, prison is always complaining. I'm getting rid of this right now. 1950, and it clearly would be a strike if they said failed state grants was relief could not be granted, right? Great, but I would hope that district courts would go through the summary judgment analysis. Excuse me. Aren't district courts familiar with the fact that to grant a motion for summary judgment requires more than to grant emotion to the grant motion to dismiss requires more than to grant motion for summary judgment. Yes, your honor. I think that your courts are more more a burden on the defendant. More burden on the defendant. Yes, and I just greatly concerned somewhat ameliorated by the existence of the United States Court of Appeals for the Fourth Circuit. Of course, a prisoner can always appeal and have it overturned. And I do think that district courts will apply. I rely on that built up. Don't always get it done by hearing. Can you go to your? Thank God for that. Can you go to your last point? You said that you were going to talk about this discretionary. Action that we could in our own discretion could dismiss this. I think you said, yes, they want to just address that point briefly. I think the A1 authority has to be residual. Otherwise there would be no reason for the three strikes provision. So I think to the extent it exists, you would want to exercise it only in extraordinary circumstances. So I don't think it's a matter of creating a circuit, but. You can function has to be residual. If it operates quickly, well, I think that if. It would just give courts a way to circumvent the three strikes provision if you could always look at the discretionary authority under a and Congress put in place a very specific scheme of types of dismissals that thought should count as strikes. And I think that specific scheme should take some primacy here. But I would also say I think it's not. We don't have a record before this court. And Council has just said at most they're relying on eight cases. The burden is on defendants to make this record. It hasn't happened here. And I think that Mr. Blakely should be entitled to notice if the court were to go down that road, because it is a serious filing restriction, and he should be entitled to notice what's being considered. Really didn't want IFP status to be a second major litigation. I think that we're, you know, that's what we're in danger of creating here. There's certain things like attorney's fees and IFP status. That are not supposed to be full blown. Separate litigations. I don't know how many of these IFP cases have gone in bank. This may be the first one ever. There's certainly, even if not in bank, obviously a lot of litigation at the Court of Appeals all over the country about this. And I think that that's what the circuit recently recognized. It's a bright line rule, save the resources in this area, cut down on litigation. I'm still uncertain as to what the bright line rule you would have is. I don't know what you would have constituted or striped. It seems to me everything that we've suggested. You say no, that's not sufficient. I think having a rule would cut down on all these. What is your bright line rule? I don't know. Bright line rule. What is your bright line rule? Dismissed as frivolous, malicious, or fails to state a claim or pursuant to a rule or statutory section that equates to one of those things. That would be a strike. And that includes summary judgment orders that say those words. I think that's a tough question and I don't think. Well, what's the answer to the question? That's the issue. I want you to say no. I actually don't think it's me. Our position would be no, and I think you don't actually have that question before you here because none of Mr. Blakely's summary judgment orders have that type of business plan. We can ask you the question even if we don't have the facts before us. All right. Ms. Sangley, Ms. Sangley, thank you so much. We really do appreciate the effort that you and the Georgetown Center have put into this case. You sure have done the court of service. And Mr. Satana, we thank you. You've both been bombarded by a lot of questions and you've maintained your poise and good nature throughout. And this court wants to thank you both. Thank you, Your Honor. Would you like to come down and shake your hand? This court will take a brief recess.
judges: Wilkinson, Niemeyer, Motz, King, Gregory, Shedd, Duncan, Agee, Davis,Keenan,Wynn,Diaz,Floyd,Thacker